Patsy PARIS, et al.,
Plaintiffs-Appellants,

v.

UNITED STATES DEPARTMENT OF HOUSING AND URBAN DEVELOPMENT, et al., Defendants-Appellees.

No. 82–2657.

United States Court of Appeals,
Seventh Circuit.

Argued June 8, 1983.

Decided Aug. 15, 1983.

---

M. Patricia Smith, Legal Services Organization of Indiana, Inc., Indianapolis, Ind., for plaintiffs-appellants.

Charles Goodloe, Jr., Asst. U.S. Atty., Stephen Laudig, Indianapolis, Ind., for defendants-appellees.

Before CUMMINGS, Chief Judge, CUDAHY, Circuit Judge, and DUMBAULD, Senior District Judge.*

CUDAHY, Circuit Judge.

The appellants in this class action are a group of prospective tenants in a housing project which the defendant Department of Housing and Urban Development ("HUD") sold to co-defendant Paul D. Toller without rental subsidies attached. The plaintiffs moved for a preliminary injunction to enjoin the sale, alleging that it violated Section 8 of the Housing Act, 42 U.S.C. § 1437f ("Section 8"). At the end of a hearing on the preliminary injunction, the district court consolidated the preliminary injunction hearing with a trial on the merits and entered final judgment for the defendants. We reverse and remand for a trial on the merits.

---

* The Honorable Edward Dumbauld, Senior District Judge of the Western District of Pennsylvania, is sitting by designation.

## I

Stonekey II is an apartment complex in Indianapolis, Indiana, which was constructed in 1952. In 1967 Stonekey II was sold to Flanner House Homes, Inc.; the purchase, as well as a subsequent rehabilitation, was financed under the Housing Act, 12 U.S.C. § 1715z. A rent subsidy was attached to the project, which provided that HUD would pay 40% of the rent of each tenant who qualified for rent subsidies.

In 1974 HUD acquired Stonekey II upon foreclosure of Flanner House Homes' mortgage. HUD owned and managed the property from 1974 until its sale in August of 1982 to Paul D. Toller, co-defendant in this action. During this period, rent subsidies were still given to eligible tenants in the project.

After several years' study of possible alternatives, ranging from demolition to plans of varying costliness for rehabilitation and remodeling of the project, HUD ultimately approved the sale of Stonekey II without rent subsidies attached. Although federal regulations require that formerly subsidized projects be sold with subsidies attached if there is a need for low and moderate income housing in the community, 24 C.F.R. § 290.25, HUD approved a waiver of this regulation on the grounds that the cost to rehabilitate Stonekey II was excessive and that it was not needed as housing. A contract of sale between HUD and Paul D. Toller was executed on July 12, 1982.

On August 3, 1982, a complaint was filed on behalf of certain named plaintiffs and of two classes: (1) the present residents of Stonekey II and (2) residents of Indianapolis who would be eligible for Section 8 rent subsidies but who do not currently reside in subsidized housing.[1] In their suit, the plaintiffs charged that HUD had acted arbitrarily and capriciously and abused its discretion by failing to maintain Stonekey II in safe and decent condition during HUD's period of ownership, by failing to comply with the requirements of 24 C.F.R. § 290.1 *et seq.* in preparing the disposition analyses and recommendations and by failing to sell Stonekey II with rental subsidies despite the shortage of habitable housing for low-income tenants in Indianapolis. The plaintiffs sought a temporary restraining order enjoining the defendants from closing the sale of Stonekey II prior to a decision on the plaintiffs' motion for a preliminary and permanent injunctive relief to prohibit any disposition of Stonekey II until all the federal statutory and regulatory requirements were met. The plaintiffs also sought, *inter alia,* a declaratory judgment that HUD's processing and approval of the sale constituted a violation of national housing policy, as codified in various housing statutes, and asked for an order requiring HUD to reprocess the disposition of Stonekey II and directing that it not be sold without rental subsidies attached.

During the week which intervened between the filing of the complaint and the Consolidated Motion for a Temporary Restraining Order and Preliminary Injunction and the hearing on that Motion, the plaintiffs were authorized by the court to undertake expedited discovery; and they deposed the HUD Area Manager, the HUD Deputy Area Manager, the HUD Chief Property Officer, the HUD Property Manager and Mr. Toller, the prospective buyer. A hearing was held on the afternoon of August 12, 1982, and the morning of August 13, 1982, during which the court heard evidence on the Motion for a Temporary Restraining Order and Preliminary Injunction. At the close of the plaintiffs' evidence, the defendants moved to dismiss under Rule 41 of the Federal Rules of Civil Procedure, alleging that the plaintiffs had failed to prove irreparable harm. At the end of the hearing, the court ruled that the administrative record was sufficient to support the agency's determination and that the sale was proper. The judge then stated:

> And under Rule 65, if that is the correct one—the injunction rule—I am using my

---

1. Only the class consisting of prospective ten-  ants is before us on this appeal.

discretion to consolidate the merits with the hearing on the preliminary injunction. And I find for the defendants in this case and against the plaintiffs. That is a final judgment.

Trans. at 265. The hearing was adjourned immediately after the judge made this statement.[2]

On August 16, 1982, title to Stonekey II was transferred to defendant Toller. In December of 1982, Toller entered into a partnership agreement with four other persons under Indiana law, and in March of 1983 transferred ownership of the apartment complex to that partnership, Tee Harbor Associates.

The plaintiffs, in their appeal to us, not only challenge the trial court's ruling on the substantive legal issues of the case but also argue that the judge abused his discretion by consolidating the preliminary hearing with a trial on the merits without giving the plaintiffs notice or an opportunity adequately to present their case. Both HUD and Toller argue that the transfer of the property in question now renders the case moot.

II

Because this court may consider a case only if it remains a live "case or controversy," U.S. CONST. art. III; *Powell v. McCormack,* 395 U.S. 486, 496, 89 S.Ct. 1944, 1950, 23 L.Ed.2d 491 (1969), we must initially determine whether the case before us has become moot. The defendants argue that the suit has been mooted because the property in question has already been sold and thus the relief requested in the complaint cannot be granted. Among the cases they cite, the most relevant is *Heitmuller v. Stokes,* 256 U.S. 359, 41 S.Ct. 522, 65 L.Ed. 990 (1921), in which a landlord sought to recover possession of certain real estate. Since the property had been sold in the

course of the appeal, the Supreme Court held that the case had become moot. The reason for this was that a judgment in the landlord's favor would no longer result in giving him the relief which he had sought— possession of the premises.

■ Although these principles are constitutionally sound, we do not think that they compel a conclusion that the case before us is moot. First, we note as a factual matter that prevention (or rescission) of the sale of Stonekey II is not the only relief which the plaintiffs seek. Their goal is the attachment of rental subsidies to Stonekey II, either in the hands of its present owner (and in its metamorphosis into "Tee Harbor Apartments") or via the route which leads through rescission and a new disposition by HUD which would include rental subsidies.

Second, and more important, even if rescission were required in order to effect relief for the plaintiff class, it is not beyond our power to rescind the sale. As the Supreme Court stated in *Porter v. Lee,* 328 U.S. 246, 251, 66 S.Ct. 1096, 1099, 90 L.Ed. 1199 (1946), and this court repeated in *Ramsburg v. American Investment Co. of Illinois,* 231 F.2d 333, 336 (7th Cir.1956), "where a defendant with notice of an injunction proceeding completes the acts sought to be enjoined the court may by mandatory injunction restore the *status quo.*" Both HUD and Toller were defendants in this proceeding below, and they completed the sale in the knowledge that it was under legal challenge. In such a situation, according to this court in *Ramsburg,* 231 F.2d at 336, if the court still has jurisdiction over the parties who control the property and thus can still reach the subject matter of the suit, it can compel restoration of the *status quo.*

More recently, this reasoning and these precedents have been applied by this court to a case closely analogous to the one at

---

**2.** On March 23, 1983, pursuant to an order of this court, the district judge filed written find-

ings of fact and conclusions of law.

hand. In *Bastian v. Lakefront Realty Corp.*, 581 F.2d 685 (7th Cir.1978), the plaintiff sued to enjoin the sale of certain property to Northwestern University alleging securities violations. After the court denied the motion for an injunction and dismissed the case, the property was in fact transferred to the University and was being used in part as a dormitory by the time of the appeal. Northwestern argued that the case had become moot because, as here, the property had been transferred and the relief originally requested could not be granted. This court held, however, that the case was not moot, since the sale could still be set aside by a court order directed to the parties, who were still within the reach of the court's equitable powers. *Id.* at 691. We think that *Bastian* is on all fours with the case before us and we therefore hold that this case is not moot because we still have jurisdiction over the parties to it.[3]

## III

Having concluded that this appeal is not barred by considerations of mootness, we turn now to consider whether the district court abused its discretion by consolidating the hearing on the preliminary injunction with a trial on the merits without notice to the parties. It is clear that a court has discretion to order that a trial on the merits be advanced and consolidated

with a hearing on a preliminary injunction either before or after the commencement of the hearing. Fed.R.Civ.P. 65(a)(2). However, if consolidation is to be ordered, the parties should be given "clear and unambiguous notice to that effect either before the hearing commences or at a time which will still afford the parties a full opportunity to present their respective cases." *Pughsley v. 3750 Lake Shore Drive Cooperative Bldg.*, 463 F.2d 1055, 1057 (7th Cir.1972). As then Judge Stevens noted on behalf of this court in the *Pughsley* case, there are several reasons for such a notice requirement:

> A litigant applying for a preliminary injunction should seldom be required either to forego discovery in order to seek emergency relief, or to forego a prompt application for an injunction in order to prepare adequately for trial. Different standards of proof and of preparation may apply to the emergency hearing as opposed to the full trial. At times, particularly if the parties consent, if discovery has been concluded or if it is manifest that there is no occasion for discovery, consolidation may serve the interests of justice. But the parties should be given a clear opportunity to object, or to suggest special procedures, if a consolidation is to be ordered.

*Id. See also* 11 C. Wright & A. Miller, FEDERAL PRACTICE & PROCEDURE § 2950 (1973).

---

**3.** Defendant Toller challenges the conclusion that all the parties to this dispute are in fact before the court. His argument is based on the fact that ownership of Stonekey II has been transferred to the Tee Harbor Associates partnership. Although the details of this argument are not spelled out, it apparently has two parts: (1) that Toller cannot reconvey the property or enter into contracts with relation to it, because title now belongs to Tee Harbor Associates; and (2) that Tee Harbor Associates is protected by its status as a bona fide purchaser, thus taking free of any claims against the property.

Both of these assertions are without merit. First of all, Toller is himself a party to this lawsuit; and he is the sole general partner of Tee Harbor Associates. Under Indiana partnership law, the acts of a partner are binding on the partnership. IND.CODE § 23–4–1–9. Thus Toller does indeed have the power, in

response to an order of the court, to bind Tee Harbor Associates either to reconvey the property or to enter into a Housing Assistance Payments Contract with the government. Second, Toller's actual knowledge of the pendency of this lawsuit can be imputed under Indiana law to the partnership. IND.CODE § 23–4–1–12. Thus Tee Harbor Associates, on the facts as they are presently known, cannot be said to have taken title to Stonekey II without knowledge of these proceedings and thus to have the status of a bona fide purchaser. Therefore, this case has not become moot merely because title to the property is now held in the name of Tee Harbor Associates.

We note, moreover, that Tee Harbor Associates can easily be substituted or joined as a party to this suit on remand, pursuant to Federal Rule of Civil Procedure 25(c), governing substitution of parties upon transfer of interest.

The appellees cite to us several cases from other circuits which have held, while recognizing the need for notice, that appellate reversal is not appropriate if the procedures followed did not result in prejudice to the appellant. *See, e.g., Eli Lilly & Co. v. Generix Drug Sales, Inc.,* 460 F.2d 1096 (5th Cir.1972); *Atlantic Richfield Co. v. FTC,* 546 F.2d 646 (5th Cir.1977); *see also* 7-Pt. 2 J. Moore & J. Lucas, MOORE'S FEDERAL PRACTICE ¶ 65.04[4] (2d ed. 1982). We note, however, that while so holding, these opinions also reaffirm the principle that consolidation is not appropriate where the parties are deprived thereby of a fair opportunity to present their entire case and have not been given fair notice that they will be required to put on full proof at the preliminary hearing. *See, e.g., Eli Lilly Co.,* 460 F.2d at 1106–07.

■ In any case, we think it clear that the appellants in this case were prejudiced by the district court's sudden and unannounced consolidation of the hearing on a preliminary injunction with a trial on the merits. The complaint in this case was filed on August 3, 1982; the hearing on the preliminary injunction was held nine days later. The plaintiffs were seeking an injunction with some urgency, because the sale of Stonekey II was scheduled to be completed on August 12, 1982. The hearing was noticed as one on the temporary restraining order and the preliminary injunction, and the district judge did not announce, until the very last minutes in court, that he was consolidating the hearing with a trial on the merits. The plaintiffs-appellants were neither asked for, nor did they give, their consent to the consolidation; and there is no indication that the judge gave them the "clear opportunity to object" mandated by *Pughsley,* 463 F.2d at 1057. Although discovery had commenced on an expedited basis, it was not complete. In fact, the data upon which HUD relied in reaching the conclusions contained in its disposition recommendation are apparently still scattered in files throughout the HUD area office. These facts provide ample evidence of prejudice in a case involving review under the Administrative Procedure Act, which must be based upon the full record before the agency at the time of its decision. *See, e.g., Citizens to Preserve Overton Park, Inc. v. Volpe,* 401 U.S. 402, 419, 91 S.Ct. 814, 825, 28 L.Ed.2d 136 (1971); *Environmental Defense Fund, Inc. v. Costle,* 657 F.2d 275, 284 (D.C.Cir.1981). We think, in sum, that the plaintiffs in this case were prejudiced by the district court's consolidation of the hearing on the preliminary injunction with a trial on the merits, and that consolidation under Rule 65(a)(2) was therefore inappropriate. *See Commodity Futures Trading Commission v. Board of Trade,* 657 F.2d 124 (7th Cir.1981).

■ Appellees argue that the issue of improper consolidation has nonetheless not been preserved for appeal, since the plaintiffs did not object to consolidation before the trial court; they refer us to a Third Circuit case in which the court held that failure to object constituted waiver. *Fenstermacher v. Philadelphia National Bank,* 493 F.2d 333 (3d Cir.1974). The *Fenstermacher* case is easily distinguishable from the one before us, however. In *Fenstermacher* the district judge had requested counsel to file post-hearing briefs, and the appellant submitted a brief and a proposed order which were both premised upon the assumption that there had been a final adjudication on the merits. *Id.* at 337. Thus the Third Circuit was justified in concluding that the appellant had acquiesced in the procedures followed in the district court.[4] In the case at hand, by contrast, consolidation was ordered in the last moments of the hearing, and court was adjourned immediately thereafter. No post-hearing briefs were requested; and, in fact, no written

---

4. Even so, the *Fenstermacher* court stated that it would be advisable for courts contemplating consolidation in the future promptly to notify counsel and request an affirmative response on the record. 493 F.2d at 337.

findings were filed by the court at the time. This appeal is, in effect, the plaintiffs' first opportunity to object to the Rule 65 consolidation. Because we have found that the district court abused its discretion by consolidating the hearing on the preliminary injunction with the trial on the merits without notice to the parties and without affording the plaintiffs a full opportunity to present their case, we vacate the final judgment entered in this case and remand it for a trial on the merits. Circuit Rule 18 shall apply.

REVERSED AND REMANDED.